UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                                                         :

ROSALIE GARCIA,                                                   :

                                                          Petitioner,            :                09 Civ. 9278 (GEL)
                                            v.                                    :                01 Cr. 1110 (GEL)
                                                                                  :

UNITED STATES OF AMERICA,          :        **OPINION AND ORDER**

                                                                                  :

                                                         Respondent.      :
---------------------------------------------------------------x

GERARD E. LYNCH, Circuit Judge:[1]

      Rosalie Garcia moves pursuant to 28 USC § 2255 to vacate her conviction, and sentence to imprisonment for life plus 25 years, for murder, racketeering, and conspiracy to distribute narcotics.  Because it "plainly appears from the motion . . . and the record of prior proceedings that [Garcia] is not entitled to relief" on all but one of her claims, see Rule 4, Rules Governing Section 2255 Proceedings for the United States District Court, those claims will be denied without requiring a Government response.  Because one of Garcia's claims raises a novel issue, the Government will be directed to respond to that aspect of her petition.  However, because the Supreme Court is considering whether to grant certiorari in a case that bears directly on that issue, the instant case will be stayed, and a Government response will not be required, until the Supreme Court has either decided that case or denied certiorari.

      (1) Garcia first asks the Court to "[e]xpand the record" because "Garcia was denied her right to present evidence that someone other than [she] committed the charged offenses."  (Pet. 1-2.)  However, Garcia does not present or even describe any such evidence, nor does she explain

---

[1] The Honorable Gerard E. Lynch, United States Court of Appeals for the Second Circuit, sitting by designation.

how she was denied the opportunity to present any evidence she wished at her five-week trial. The argument is mere boilerplate, and has no merit.

(2) In a somewhat confusing series of arguments (Pet. 2-12), Garcia appears to contend that some unspecified special measures were required to "provide basic due process and fairness" at her trial, given her "low end borderline range of intellectual functioning" (id. 2). These claims are without legal or factual merit.

As Garcia recognizes, this Court was careful, in the face of evidence of her possible intellectual limitations, to have her competency thoroughly evaluated. The Court conducted a two-day hearing, at which the Court considered not only expert testimony but also its own observations of the defendant, extensive even by that stage of the case. The Court also considered recorded telephone conversations from the jail in which Garcia, in "a sample of genuine unguarded behavior without any incentive to fabricate or exaggerate" (10/27/05 Tr. 98), showed herself to be "knowledgeable, decisive and well-organiz[ed]" in regard to the case, and "rather decisive and independent-minded" about what should be done about it (id. 99). Garcia was found competent to stand trial, and the Court observed at sentencing that Garcia's behavior at trial laid to rest any doubt about her competence, demonstrating "that she actively followed what was going on, conferred with her attorneys, and generally comported herself like any other defendant." (6/9/06 Tr. 7.) The Court of Appeals affirmed the finding of competence. United States v. Garcia, 282 Fed. Appx. 14, 17-18 (2d Cir. 2008).

Although Garcia recognizes that the question was "[n]ever raised" by her at any previous stage in the proceedings (Pet. 5), she now argues that defendants of low intelligence are entitled to unspecified special consideration to guarantee their rights. (Id. 7-12.) Though it is unclear

2

what Garcia believes should have been done at trial, she appears to contend that the Court should have provided her with specific advice that she had a right to testify in her own defense, and that if she did not testify the jury would be left to consider her case based solely on the uncontradicted testimony of the Government's witnesses. (Id. 7-8.)

These arguments are meritless. First, because Garcia failed to raise this issue on direct appeal, the claim is procedurally defaulted. "[W]here a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998). Garcia makes no attempt to establish cause for her failure to raise this argument. Nor could she, as the facts on which she relies were all part of the record available on appeal. Nor is there any showing of prejudice; as developed below, there is no indication in the record that Garcia was prejudiced by the absence of whatever procedural safeguards she now claims should have been utilized. Finally, Garcia may not avail herself of the alternative ground for excusing procedural default, because she makes no showing that she was actually innocent of the charges. See Bousley v. United States, 523 U.S. 614, 622 (1998); Doe v. Menefee, 391 F.3d 147, 160-61 (2d Cir. 2004). Indeed, the evidence against Garcia on the narcotics distribution aspects of the charges was truly overwhelming, and the evidence implicating her in the murders, while less overpowering, was amply sufficient to establish her guilt.

Second, Garcia cites no authority, and the Court has found none, for the proposition that the Court is required to advise any defendant of her right to testify (or not to testify). To the extent that Garcia suggests the Court should have pointed out certain tactical disadvantages of

exercising her right to remain silent and put the Government to its proof, her position is untenable: Garcia suggests a skewed presentation that points out only the disadvantages of one side of a difficult tactical choice.  Any fair evaluation of the advantages and disadvantages of testifying or not would be far more nuanced and detailed, and could only come from defense counsel, who are familiar (as the Court is not) with what the defendant would say, what impeachment material might exist, and what summation arguments might be available on defendant's behalf.

Third, Garcia conspicuously does not allege, in words or substance, that she was not advised by her lawyers of her right to testify, or of the consequences of failing to do so.  Nor, indeed, does she allege that she was given such advice but failed to understand its import.  This omission is not surprising.  Notably, Garcia had not one but two highly capable and experienced attorneys at trial, because the Court appointed additional learned counsel when the case was still potentially capital, and permitted both to continue to represent her after the Government declined to seek the death penalty, due to the complexity of the legal issues in the case and the familiarity both counsel had developed with the facts in successfully arguing that the Department of Justice should not pursue capital punishment.  Her attorneys diligently and effectively presented every plausible defense, and represented her interest at trial with skill and dedication.  Her appellate counsel as well was a respected and veteran appellate advocate, who vigorously presented a series of issues on appeal, but did not suggest that her trial attorneys had been ineffective in any way – nor does Garcia make such an argument now.  There is no reason to believe, and Garcia does not contend, that her attorneys did not advise her of the pros and cons of taking the stand in her own defense.  There is thus no reason to find that the Court should have taken steps to

provide further advice, or that she was prejudiced in any way by her failure to take the stand.

Fourth, Garcia does not offer any affidavit attesting to what testimony she would have given in her own defense. Instead, she rests solely on brief unsworn assertions in her legal brief (apparently prepared by a jailhouse paralegal) that she would have contradicted certain statements of two of the Government's many witnesses against her. (Pet. 11.) There is no serious possibility that such testimony would have altered the jury's conclusions, particularly given her failure to deny any of the other voluminous testimony and other evidence against her, including the testimony of other witnesses, such as Jorge Velez and Steven Serrano, implicating her in the charged murders.[2]

Finally, as suggested by the Court's ruling at the time of the competency hearing, while there is some evidence supporting the view that Garcia has some intellectual limitations, there is also reason to believe that she has exaggerated these difficulties for tactical advantage. (See 10/27/05 Tr. 99-101.) And as complicated as some of the legal issues in the case may have been, the factual issues for trial were simple and direct: whether Garcia ran a drug-distribution organization and participated in decisions to murder its enemies. The record does not support the conclusory assertion in Garcia's petition that she is such an unusually low-functioning person that she could not understand such simple matters. There is no reason to believe that she could

---

[2] In the course of this argument, Garcia also alludes to a number of exhibits, some of which are attached to her petition. (Pet. 6.) It is not clear what importance she attributes to these exhibits, however. She "emphasizes" that they are *not* offered "as grounds to vacate [her] conviction" (id.), and she makes no claim that these materials were not available to her at trial, or that they should have been offered or received in evidence, or that they undermine her conviction in any way. The exhibits thus cast no legal or factual doubt on the propriety of her conviction, and certainly do not come close to establishing actual innocence so as to excuse Garcia's procedural defaults.

not comprehend that if the jury did not hear her testimony, it would be left to evaluate only the testimony of her accusers as the principal evidence in the case. There is thus no basis for the contention that Garcia's asserted intellectual limitations gave rise to any need for the Court to take special steps to protect her rights, or that she was prejudiced in any way by the absence of such unprecedented and unspecified interventions.

(3) While conceding that she "does not raise the defense of voluntary intoxication," Garcia argues that a jury nevertheless "should hear her testimony [that 'she is a drug addict and her addiction was not voluntary'] and decide . . . if her participation and involvement surrounded her non-voluntary addiction." (Pet. 12.) This contention is meritless. First, Garcia raised no defense at trial, and proffered no evidence, to support the conclusion that she was a victim on non-voluntary drug addiction or that her addiction, alone or in combination with her intellectual limitations, deprived her of the mens rea necessary to commit any of the charged offenses, or in any other way constituted a defense to any of the charges against her. Any such defense is accordingly forfeited. Second, drug addiction is not a defense to murder or narcotics distribution.[3] Smith v. Follette, 445 F.2d 955, 961 (2d Cir. 1971). The Government presented overwhelming evidence at trial that Garcia managed a large street-level narcotics-dealing enterprise over a period of years, and participated in ordering several murders in furtherance of that enterprise. Testimony on her part that she was addicted to drugs during that period could

---

[3] Oregon v. Ice, 555 U.S. ----, 129 S. Ct. 711 (2009), on which Garcia unaccountably relies in advancing this argument, offers no support at all for her claim. Ice holds that the principles announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), do not preclude a state from permitting judges, rather than juries, to find facts relevant to deciding whether to impose consecutive rather than concurrent sentences. It has nothing to do with Garcia's argument.

hardly have advanced her cause.

(4) Citing no authority, and implicitly conceding that "prior precedent" forecloses the argument, Garcia argues that the joint trial of herself and two co-defendants was improper because it in some undescribed manner "prevent[ed] the opportunity for cross-examination of other conspirators." (Pet. 13.) She further argues that at a new series of separate trials, "each individual defendant may ask each other indicted defendant to the witness stand." (Id.) This argument is without merit. First, Garcia made no motion for a severance on this or any other ground, and the argument is accordingly forfeited for habeas relief absent a showing of cause and prejudice that Garcia makes no attempt to establish. Second, even now, Garcia offers no affidavit by any of her co-defendants regarding their willingness to testify at a separate trial, or what exculpatory testimony if any they might offer. See United States v. Finkelstein, 526 F.2d 517, 523-25 (2d Cir. 1975) (setting forth factors to be considered in assessing severance motions on grounds of co-defendant exculpatory testimony). Indeed, Garcia does not even hint at what exculpatory testimony she believes could have been offered by her co-defendants, and she acknowledges that they might well "exercise [their] Fifth Amendment right to remain silent" at any separate trial. (Pet. 13.) There is thus no basis for a finding that Garcia was prejudiced in any way by her joint trial.

(5) Garcia argues that because the predicate murder charges in the RICO counts of the indictment "were charged under state law pursuant to RICO, the Court's use of the *federal* definition and jury instruction of the *mens rea* for murder was misapplication of the RICO statute requiring the Court vacate and order a new trial." (Pet. 14; emphasis in original.) Whatever the merits of the legal theory on which this argument is based, Garcia is factually mistaken about the

7

jury charge. In defining murder for purposes of Racketeering Act Two, the Court specifically advised the jury that, although the same murder was charged as a separate crime elsewhere in the indictment, in considering the defendants' guilt on the specific predicate racketeering act for purposes of the RICO counts, the jury should

> remember that the murder of Mr. Rivera is also charged in Count Five. However, that charge involved a different statute and different requirements for what the Government needed to prove. In connection with Racketeering Act Two, the definition of murder under New York State law, and not any federal statute, governs. Fortunately, that law is relatively simple. It says that a person is guilty of murder when, with the intent to cause the death of another person, he causes the death of such person or of a third person.

(12/5/05 Tr. 3937.) The Court then went on to define the specific elements of murder under New York State law, in instructions that Garcia does not in any way question.[4] There is thus no merit whatsoever to this contention.

(6) Garcia seeks an evidentiary hearing to redetermine the drug amounts attributable to her with respect to the narcotics conspiracy count. (Pet. 15.) No such hearing was sought at her sentencing, undoubtedly because, in view of the mandatory life sentence applicable to one of the

---

[4] Garcia herself was not charged in the murder underlying Racketeering Act Two, which was alleged only as to co-defendants Manuel Roman and Ricardo Silva. However, in instructing the jury as to Racketeering Acts Three, Four, and Five, which charged various other murders and conspiracies and attempts to murder against all three defendants including Garcia, and Racketeering Act Six, which alleged yet another murder and conspiracy against only Garcia and Roman, the Court incorporated by reference the instructions cited in the text with respect to Racketeering Act Two. See 12/5/05 Tr. 3940 (with respect to Racketeering Act Three, "the same instructions about conspiracy to murder apply that I have just given with respect to Racketeering Act Two apply"); 12/5/05 Tr. 3942 (with respect to Racketeering Acts Four and Five, "[t]he instructions regarding murder and aiding and abetting that I gave you with respect to Racketeering Act Two apply with respect to these charges"); Id. (with respect to Racketeering Act Six, "[t]he instructions about conspiracy to murder, murder and aiding and abetting that I have already given you in connection with Racketeering Act Two apply here as well").

murder counts, see United States v. James, 239 F.3d 120, 127 (2d Cir. 2000), the precise calculation of the base offense level for narcotics conspiracy would have had no practical effect on her sentence.  The issue is thus waived.  In any event, the evidence at trial was more than adequate to support the jury's verdict and the base offense level recommended in the pre-sentence report and adopted by the Court, and Garcia presents no argument or evidence that suggests any material defect in the calculation.

(7) Finally, Garcia argues that in light of the Second Circuit's recent decisions in United States v. Williams, 558 F.3d 166 (2d Cir. 2009), and United States v. Whitley, 529 F.3d 150 (2d Cir. 2008), she was erroneously sentenced to a mandatory 300-month consecutive term of imprisonment on Count Twelve, which charged her with violating 18 U.S.C. § 924(c)(1) and (2).  While this argument has little or no practical impact, since the challenged sentence runs consecutive to her sentence of life imprisonment on numerous other counts, the issue is a novel one on which the Government's views would be helpful.  However, the Supreme Court is currently considering granting certiorari to resolve a conflict among the circuits as to whether Williams and Whitley were correctly decided.  See Petition for Writ of Certiorari, Williams, 558 F.3d 166 (Oct. 20, 2009) (No. 09-466).  Since Garcia's argument has no practical effect on her life sentence, she will not be prejudiced by postponing decision on this issue until the Supreme Court has decided whether the foundation of her argument is defective.  Accordingly, proceedings will be stayed, and the Government will not be required to respond, until the Supreme Court finally resolves the Williams case.

Accordingly, for the foregoing reasons, it is hereby ORDERED that

(1)     Garcia's motion is denied with respect to all arguments other than her objection to

the consecutive sentence imposed on Count Twelve; and

(2)     With respect to that issue, proceedings are stayed pending the Supreme Court's final resolution of <u>United States v. Williams</u>.

SO ORDERED.

Dated: New York, New York
       December 21, 2009

_____
GERARD E. LYNCH
United States Circuit Judge